UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AARON ANTONY BRADFORD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:24-CV-01293 JMB |
| NATHANIEL HAYWARD, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon review of plaintiff Aaron Bradford's amended complaint, *see* ECF No. 11, for frivolousness, maliciousness and for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). Counsel for plaintiff submitted the amended complaint on January 28, 2025, after the Court did an initial review of plaintiff's complaint on October 15, 2024, and found that appointment of counsel was necessary pursuant to 28 U.S.C. § 1915(e)(1). [ECF No. 5]. After review of the amended complaint, the Court will issue process on plaintiff's claims for relief.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

**The Amended Complaint**

Aaron Bradford, an inmate currently incarcerated in Potosi Correctional Center (PCC) in Mineral Point, Missouri, asserts six (6) counts for relief in this civil rights matter brought pursuant to 42 U.S.C. § 1983, relating to events that occurred during his pretrial incarceration at St. Louis County Justice Center in Clayton, Missouri, in November of 2023. Plaintiff names thirteen (13) defendants in this action, and he sues all defendants in their individual capacities only: (1) Brian Mitchell (Captain); (2) Rodrick Oliver (Lieutenant); (3) Emmanuel Porter (Lieutenant); (4) Anthony Williams (Lieutenant); (5) Sean Phillips (Corrections Officer); (6) Nicholas Thompson (Lieutenant); (7) Joshua McGrotty (Major); (8) Aaron Davis (Sergeant); (9) Charles McKnight

(Major); (10) Brent Cureton (Superintendent); (11) Nathaniel Hayward (Deputy Director); (12) Doug Burris (Director); and (13) Mary Stearn (Case Manager).

Plaintiff claims that he was housed at the St. Louis County Justice Center in November of 2023. Prior to the week of November 23, 2023, he was housed in Cell #7 in the 8-C-1 Supermax area on the eighth floor of the Justice Center. [ECF No. 11, pp. 5-7]. A pipe connecting the toilet system to his cell and the neighboring inmate's cell was not functioning properly causing the toilet in plaintiff's cell to overflow when the inmate in the adjoining cell flushed his toilet, and vice-versa. *Id*. Plaintiff informed defendants Williams, Thompson, Oliver and Porter of the issues with the toilet over the course of the week and asked them to correct the problem and/or move him to a different cell with a properly functioning toilet. However, none of these defendants acted upon plaintiff's requests. This led plaintiff and the inmate in the neighboring cell to either inadvertently flood the adjoining cell with toilet water by flushing their toilet or leave urine and feces in their own toilet due to not being able to flush their own toilet. Plaintiff asserts that his cell was flooded with urine and feces several times during the week. *Id*.

Additionally, plaintiff's sink, his main source of drinking water, was also affected by the malfunctioning pipe. Thus, he became ill from drinking contaminated drinking water which caused him to have diarrhea. Despite plaintiff's request to be moved to a new cell or to have the pipes fixed, he was not moved, and the pipes were not fixed. Additionally, he was not provided with cleaning supplies to clean his cell when the toilet overflowed. Plaintiff eventually broke out in hives and developed sores on his feet, lost weight and suffered from vomiting and diarrhea due to the malfunctioning pipes in his cell. *See id*.

On or about November 22, 2023, plaintiff was sent to St. Louis County Justice Center's infirmary. [ECF No. 11, p. 7]. It appears that the cell he was assigned to in the infirmary lacked

running water. *Id.* That evening, plaintiff asked Officer Moore to turn the water on in his cell in the infirmary, so that he could flush the toilet and get water from the sink. Moore refused to do so. Moore also refused to get his supervisor, Mitchell, who was the Watch Commander, relating to plaintiff's request. *Id*. at 8.

Around midnight, Mitchell responded to a report of a broken sprinkler head in plaintiff's infirmary cell along with Correctional Officers Ivy, Moore, Dew, Thomas and Westbrook. Mitchell ordered that plaintiff be taken from his cell and placed in a restraint chair. *Id*. In the restraint chair, plaintiff had restraints placed over his head, shoulders, wrists and ankles, and plaintiff had a helmet placed over his head along with a spit net. *Id.* at pp. 8-9. Mitchell ordered that the restraint chair be moved from the infirmary to the eighth floor Sallyport area. *Id*. at 9. Mitchell then ordered that Moore flip the restraint chair on its back so that plaintiff was facing toward the ceiling with his legs elevated up off the ground. *Id*. Mitchell then placed an iron restraint over plaintiff's right shin, as tight as possible, which cut deeply into plaintiff's shin. *Id*. The purpose of this "iron restraint" was purportedly made for an ankle rather than a shin. Thus, it caused plaintiff an immense amount of pain and discomfort. *Id.* Plaintiff cried out due to the excessive tightness of the restraints, and Mitchell and several other officers heard the cries. *Id*. Purportedly, when a nurse came to check that the restraints were not too tight, Mitchell told everyone to clear the Sallyport area, which prevented a nurse from checking on plaintiff. *Id.* at pp. 9-10.

Plaintiff was kept in the restraint chair between nine and ten hours. *Id.* at 10. According to St. Louis County Justice Services' Policy on the use of restraint chairs, an inmate is supposed to be allowed to stand up to stretch approximately every two hours when being held in a restraint chair. *Id.* Although plaintiff asked Mitchell to allow him out of the restraint chair for breaks,

4

Mitchell denied him such breaks. *Id*. He also failed to allow plaintiff out of the restraint chair to use the restroom. *Id*. Mitchell further failed to provide plaintiff any food or water while he was in the chair. *Id*. Although medical staff came to check on plaintiff and recommended he be given break periods from the chair and that the restraints be loosened, Mitchell did not comply with the recommendations. [ECF No. 11, pp. 10-11]. Plaintiff allegedly suffered multiple physical and mental injuries because of his time in the restraint chair.

On November 27, 2023, plaintiff received three letters from defendant Doug Burris. [ECF No. 11, p. 11]. The first letter alleged that plaintiff had damaged a sprinkler head located in housing unit 8C cell #7 in the Justice Center. *Id*. Presumably the letter referred to the cell plaintiff was assigned to with the malfunctioning pipes/toilet system.

The second letter alleged that on November 22, 2023, plaintiff damaged a sprinkler head located in cell #27 inside the jail's infirmary. *Id.* at p. 12. The third letter alleged that on November 23, 2023, plaintiff damaged a sprinkler head located in cell #27 inside the jail's infirmary. *Id*. All three letters advised plaintiff that the Justice Center had a right to collect a fee of up to $200 per incident from plaintiff to repair the damaged sprinkler heads. Plaintiff was notified that before any fees would be assessed and any money would be removed from plaintiff's commissary account, he had a right to request a hearing to share his version of events regarding the damaged sprinkler heads. *Id.* Plaintiff was advised that to receive a hearing, he needed to send a letter to defendant Burris within ten days of November 27, 2023. The hearing was then to be held within five days of the receipt of the request for hearing. *Id.* Plaintiff was warned that if no hearing was requested within the ten-day timeframe, he would receive a written notice explaining if any fee was assessed against him and if so, the amount. *Id.*

5

The information plaintiff received in these letters is consistent with St. Louis County Code § 606.210, which authorizes the Director of St. Louis County Justice Services or the Director's designee to deduct up to $200 per piece of County property damaged from an inmate's commissary account if the inmate is found to have damaged County property. St. Louis County Code § 606.210 provides that a jail inmate has a right to a hearing before any property damage fees may be deducted if the inmate requests a hearing. Though required by St. Louis County Code § 606.210, the letters plaintiff received from defendant Burris did not inform plaintiff of the value of the repair costs or replacement costs of the sprinkler heads plaintiff allegedly damaged. [ECF No. 11, p. 13].

Plaintiff sent a letter to Burris within ten days after November 27, 2023, requesting a hearing regarding the damaged sprinkler heads, as he had been instructed to do in the three letters he received from Burris. *Id*. Despite having requested a hearing regarding the damaged sprinkler heads within the permitted time, plaintiff never received a hearing from defendant Burris. *Id*.

On December 7 or 8, 2023, plaintiff noticed that $600 had been withdrawn from his commissary account to pay for the broken sprinkler heads even though he had requested and not yet received a hearing on the matter. *Id*. When plaintiff inquired about the money being taken out of his account before he had received his requested hearing, defendant Stearn informed plaintiff that she had taken the money out of his account on December 7, 2023. *Id*. When she withdrew the $600 fee from plaintiff's commissary account, defendant Stearn knew that plaintiff had requested but not yet received a hearing regarding the damaged sprinkler heads. *Id*. Plaintiff alleges that Stearn, a Case Manager, was acting at the direction of Burris, who signed the letter, when she deducted the $600 fee from plaintiff's commissary account.

On December 8, 2023, plaintiff was out of his cell on recreation taking a walk. [ECF No. 11, p. 14]. He asked to speak to defendant Hayward, Deputy Director at the Justice Center, about

6

the money taken from his commissary account, and Hayward came to speak to him. Plaintiff explained to Hayward that he had submitted a timely request for a hearing regarding the damaged sprinkler heads and had not yet received the promised hearing before the $600 fee was removed from his commissary account. *Id.* Plaintiff requested that the withdrawn funds be returned to his commissary account at least until his hearing was held. Defendant Hayward stated that the $600 fee would not be refunded. Plaintiff then requested to speak with defendant Burris, the Director, but Hayward denied the request. *Id.* Around the time his conversation with Hayward ended, plaintiff was ordered to return to his cell. Plaintiff did not return to his cell and instead moved near the shower area within the 8-C-1 Supermax area. Within moments, a Correctional Emergency Response Team (CERT), consisting of numerous correctional officers gathered near plaintiff. This CERT included defendants Phillips, Thompson, Davis, and McGrotty. Defendants McKnight, Cureton, and Hayward were also present with the CERT. When confronted by the CERT, plaintiff still refused to return to his cell, but he purportedly did not threaten the CERT officers. *Id.* at 15.

Thompson then fired his taser at plaintiff. The taser's probes stuck into plaintiff's leg. Thompson activated the taser to electrically shock plaintiff. As Thompson began tasing plaintiff, other members of the CERT advanced on plaintiff and attempted to force him onto the ground. [ECF No. 11, p. 15]. Plaintiff then got on the ground face-down of his own accord. When plaintiff got to the ground, he was not resisting the officers, nonetheless, Phillips sat on plaintiff's back and began punching him in his back and in the side of his head. *Id.* Phillips also grabbed plaintiff by the hair and slammed plaintiff's face into the floor multiple times. While plaintiff was face-down on the ground, was not resisting, and was being punched and slammed against the ground by Phillips, Thompson continued to tase plaintiff. Thompson did not stop tasing plaintiff until Phillips

7

called out multiple times for Thompson to stop the taser because Thompson was feeling the effects. *Id.* at 15-16.

McGrotty and Davis held plaintiff down as Phillips punched him and slammed his face into the ground and Thompson continued to tase him. [ECF No. 11, p. 16]. Neither McGrotty nor Davis intervened to stop Phillips or Thompson from using force against Plaintiff while Plaintiff was face-down in a submissive position and not resisting the officers. Defendants McKnight, Cureton, and Hayward were present, witnessed Defendant Phillips punching Plaintiff and slamming Plaintiff's head into the ground, and witnessed Defendant Thompson continue to tase Plaintiff while he was on the ground in a submissive position and not resisting. Despite being present and witnessing these actions, Defendants McKnight, Cureton, and Hayward did not intervene to stop Defendants Phillips and Thompson from using this force against Plaintiff while Plaintiff was face down in a submissive position and not resisting corrections officers. When Defendant Phillips finally stopped punching Plaintiff and slamming Plaintiff's head into the ground and Defendant Thompson stopped tasing Plaintiff, the CERT forcibly placed Plaintiff into a restraint chair. Plaintiff was left in the restraint chair for between five and eight hours before he was finally released to the infirmary to receive treatment for his injuries. Plaintiff remained in the infirmary for three or four days following the incident on December 8. *Id.*

Plaintiff sustained multiple physical and emotional injuries from the incident on December 8, 2023. [ECF No. 11, p. 17]. His left eye was black and swollen shut, and he had a cut above his right eye which subsequently became infected. He also had a large knot on his forehead, and had hair ripped out by defendant Phillips during the altercation. Plaintiff's left leg, where he was tasered, was swollen and bloodied as well, and he suffered trigeminal neuralgia and headaches. *Id*.

8

In his amended complaint filed on January 28, 2025, plaintiff brings the following claims for relief: (1) unlawful conditions of confinement in violation of the Fourteenth Amendment against defendants Porter, Oliver, Thompson and Williams; (2) excessive force in violation of the Fourteenth Amendment against defendant Mitchell; (3) deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment; (4) excessive force in violation of the Fourteenth Amendment against defendants Phillips and Thompson; (5) failure to protect in violation of the Fourteenth Amendment against defendants Davis, McGrotty, McKnight, Cureton, and Hayward; and (6) denial of procedural due process in violation of the Fourteenth Amendment against defendants Burris and Stearn. [ECF No. 11, pp. 17-27].

## Discussion

### A. Unlawful Conditions of Confinement Claims

Plaintiff alleges that he was subjected to unlawful conditions of confinement during the week leading up to November 23, 2023, in Cell #7 in the 8-C-1 Supermax area on the eighth floor of the Justice Center. He claims that he was subjected to feces, urine, and unclean toilet water flooding his cell and foul odors emanating from the human waste built up in his toilet. Plaintiff states that he informed defendants Williams, Thompson, Oliver and Porter of the issues with the toilet over the course of the week and asked them to correct the problem and/or move him to a different cell with a properly functioning toilet. However, none of these defendants acted upon plaintiff's requests.

The Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims concerning their conditions of confinement. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). According to the United States Supreme Court, the government may detain defendants prior to trial but the conditions of

confinement at the detention facility cannot "amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37. The Supreme Court described two ways to determine whether the conditions rise to the level of punishment. A plaintiff can demonstrate that the conditions of confinement are intentionally punitive. Alternatively, if no intent to punish is expressed, a plaintiff can show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Id.* at 538-39.

In this case, plaintiff has not alleged an intention to punish on the part of the St. Louis County defendants. However, he has alleged that the conditions violated the Constitution and were not reasonably related to a legitimate governmental purpose. The Court will therefore issue process on his claims for relief.

### B. Excessive Force Claims

Plaintiff asserts two excessive force claims in his amended complaint. He alleges that defendant Mitchell used unreasonable force on November 23, 2023, when he unlawfully fastened plaintiff to the restraint chair, utilizing the iron restraint on his shin (meant for his ankle), and fastened the restraints as tight as possible while pushing plaintiff's restraint chair in an upright position making him face the ceiling. Mitchell then purportedly kept plaintiff in the restraint chair with no breaks for nine to ten hours against medical advice.

Plaintiff next asserts that defendants Phillips and Thompson acted with excessive force on or about December 8, 2023, when they were part of the CERT Team who confronted plaintiff. Phillips allegedly used unlawful force when he punched plaintiff and slammed plaintiff's head into the ground after plaintiff was in a submissive position and purportedly not resisting officers. And Thompson used unlawful force by continuing to tase plaintiff while plaintiff was in a submissive position on the ground and not resisting officers.

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from "the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2473 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). To prevail on an excessive force claim, plaintiff must show that a defendant purposely or knowingly used objectively unreasonable force. *Id.* "Whether the application of force is unreasonable turns on the facts and circumstances of each particular case." *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (internal quotations and citations omitted). "Factors relevant to assessing the objective reasonableness of force used by officers include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citing *Kingsley*, 135 S. Ct. at 2473).

Both circumstances cited by plaintiff in his amended complaint are enough for this Court to issue process against defendants. These instances intimate that defendants' motives were punishment rather than acting with a governmental purpose, and as such survive initial review.

**C.  Deliberate Indifference to Serious Medical Needs Claims**

Plaintiff alleges that defendant Mitchell was deliberately indifferent to plaintiff's risk of serious harm caused by his placement in the restraint chair. Namely, plaintiff argues that Mitchell fastened the restraints excessively tight, failed to take reasonable measures to abate the risks of fastening the restraints so tight, failed to take the recommendations of the medical staff as to loosening the straps or giving plaintiff breaks from the restraint chair, and used the chair as punishment.

The Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners. *See Stearns,* 957 F.3d at 906 (8th Cir. 2020) (citing *Bell*, 441 at 520). However, this distinction "makes little difference as a practical matter," because the same standard is applied. *Kahle v. Leonard,* 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

The Eighth Amendment prohibits cruel and unusual punishment, and limits conditions of confinement. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes,* 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)). A jail official's intentional denial of, or delayed access to, medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976).  To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need. *Roberts v. Kopel,* 917 F.3d 1039, 1042 (8th Cir.

2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations and citation omitted).

In this case, plaintiff purports that Mitchell failed to adhere to the recommendation of the medical staff at the Justice Center as to the loosening of the restraint chair's straps, used the restraint chair as a punishment, and tightened the straps on the restraint chair excessively. As stated, plaintiff has alleged enough to make a deliberate indifference claim against defendant Mitchell, and the Court will issue process on this claim.

### D. Failure to Intervene

Plaintiff asserts that defendants Davis, McGrotty, McKnight, Cureton and Hayward, Correctional Officers at the Justice Center who were part of the CERT Team on December 8, 2023, failed to intervene and protect plaintiff from unreasonable force inflicted upon him by defendants Thompson and Phillips.

The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994). "A jail official violates the Due Process Clause ... when he is deliberately indifferent to a substantial risk of serious harm to a pretrial detainee and fails to protect the detainee." *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir.2013). This standard requires a detainee to make two showings, one objective—that he faced a substantial risk of serious harm—and one subjective—that "the official knew of and disregarded the risk to the inmate's safety." *Id.* Since 1981, the Eighth Circuit has recognized a failure to intervene claim, and it has been clearly established that a jail official violates a detainee's due process rights if the official knows that another official is using excessive

13

force against the detainee but fails to intervene. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir.1981); *see also Krout v. Goemmer*, 583 F.3d 557, 566 (8th Cir.2009) (denying qualified immunity to police officers who failed to intervene to prevent use of excessive force by another officer).

Plaintiff has properly alleged that defendants Davis, McGrotty, McKnight, Cureton and Hayward were part of the CERT Team on December 8, 2023, and that they stood and watched while plaintiff was purportedly not resisting but Phillips continued to punch plaintiff and slam his head into the floor and Thompson continued to tase him. The Court will therefore issue process as to defendants Davis, McGrotty, McKnight, Cureton and Hayward.

**E.  Denial of Procedural Due Process**

Plaintiff asserts that defendants Burris and Stearns unlawfully, and without due process, deducted $600 from his prison account at the Justice Center without providing him with the opportunity for hearing. He asserts that a reasonable official should have known that he was entitled to a hearing prior to deducting the money from his prison account, and thus, defendants acted unlawfully.

It is well established that "[p]risoners ... may not be deprived of life, liberty or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) (holding that not all sanctions resulting from prison disciplinary hearings affect protected liberty interests). Nonetheless, to prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law. *Ky. Dep't of*

14

*Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir.1997). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also Phillips v. Washington Legal Found*., 524 U.S. 156, 163–64 (1998). Thus, courts must look to state law to determine whether a particular claim of right is sufficient to constitute a property interest for purposes of the Due Process Clause. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430 (1982) ("The hallmark of property ... is an individual entitlement grounded in state law."); *Roth*, 408 U.S. at 577.

Given that St. Louis County Code § 606.210 provides that a jail inmate has a right to a hearing before any property damage fees may be deducted, and plaintiff alleges he requested such a hearing, the Court will issue process on plaintiff's procedural due process claim against defendants Stearns and Burris in his amended complaint.

## Conclusion

Considering the aforementioned, the Court finds that plaintiff makes plausible allegations in his amended complaint to state claims against defendants for unlawful conditions of confinement, excessive force, deliberate indifference to his serious medical needs, failure to protect, and denial of procedural due process. The Court will issue process on these claims against the thirteen named defendants.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff must pay an initial partial filing fee of $55.54 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance

15

payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the amended complaint as to plaintiff's claims for unlawful conditions of confinement in violation of the Fourteenth Amendment against defendants Emmanuel Porter, Rodrick Oliver, Nicholas Thompson and Anthony Williams, in their individual capacities. Defendants, employees at St. Louis County Justice Center shall be served with summons.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the amended complaint as to plaintiff's claim for excessive force in violation of the Fourteenth Amendment against defendant Brian Mitchell, in his individual capacity. Defendant, an employee at St. Louis County Justice Center shall be served with summons.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the amended complaint as to plaintiff's claims for excessive force in violation of the Fourteenth Amendment against defendants Sean Phillips and Nicholas Thompson, in their individual capacities. Defendants, employees at St. Louis County Justice Center shall be served with summons.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the amended complaint as to plaintiff's claim for deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment against defendant Brian Mitchell, in his individual capacity. Defendant, an employee at St. Louis County Justice Center shall be served with summons.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the amended complaint as to plaintiff's claims for failure to intervene in violation of the

16

Fourteenth Amendment against defendants Aaron Davis, Joshua McGrotty, Charles McKnight, Brent Cureton and Nathaniel Hayward, in their individual capacities. Defendants, employees at St. Louis County Justice Center shall be served with summons.

**IT IS FINALLY ORDERED** that the Clerk shall issue process or cause process to issue upon the amended complaint as to plaintiff's claims for denial of due process in violation of the Fourteenth Amendment against defendants Doug Burris and Mary Stearn, in their individual capacities. Defendants, employees at St. Louis County Justice Center shall be served with summons.

Dated this <u>8th</u> day of July, 2025.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE